STATE *v.* JOHN J. COCKLIN.

May Term, 1937.

Present: POWERS, C. J., SLACK, MOULTON and SHERBURNE, JJ., and SHIELDS, Supr. J.

Opinion filed October 14, 1938.

*Ernest W. Gibson, Jr., Frank E. Barber* and *Peter A. Bove* for the respondent.

*A. J. Spero,* State's attorney, for the State.

SLACK, J. The respondent stands convicted of seventy-one violations of P. L. 8451, which reads as follows:

> "A cashier or other officer, agent or servant of an incorporated bank who embezzles or fraudulently converts to his own use bullion, money, notes, bills, obligations or securities or other effects or property belonging to and in the possession of such bank or belonging to any person and deposited therein, shall be guilty of larceny and shall

be imprisoned in the state prison not more than ten
years or fined not more than one thousand dollars.''

He briefs exceptions to the admission of evidence, the over-
ruling of a motion for a directed verdict, the charge of the court
and the denial of a motion to set aside the verdict.

For several years prior to June, 1932, he was employed as
teller and bookkeeper by the Marble Savings Bank of Rutland.
The evidence tended to show that while so employed he, at dif-
ferent times, took and fraudulently converted to his own use
money of such bank amounting in the aggregate to approxi-
mately two hundred and fifty thousand dollars.

The first witness called by the State was one Watkins, who
testified that he was connected with the office of the commissioner
of banking and insurance, that he began an examination of the
Marble Savings Bank December 30, 1935, and early in January
found certain ''charge-offs,'' as he termed them, on the general
ledger, the surplus account of the bank, which he reported to
one Carpenter, the then commissioner of banking and insurance;
that further examination of such bank was suspended until
May 7, 1936, when it was resumed by order of such commissioner.

The respondent objected to all evidence of the witness re-
specting any examination made by him subsequent to the latter
date on the ground that previous to that time the commissioner
and George Jones, who respondent claimed represented the
attorney general, asked him to aid in making such examination
and promised him that if he would do so he would be protected
and not brought to trial. The objection was overruled subject
to his exception.

He then moved that the court determine the question of
his claimed immunity, and offered to prove that the evidence
got together by Watkins was with his aid and cooperation in-
duced by the promises of the commissioner and Jones as above
stated, and that at the time they were made Jones told him that
he was ready to issue a warrant for his arrest unless he agreed
to aid in such investigation and would also withdraw as candi-
date for the office of city treasurer in the coming election. This
motion was then denied subject to respondent's exception; but
before the direct examination of the witness was concluded, it
was granted, and the court heard all evidence offered relating to
the claimed immunity and intimidation. The court found from

such evidence that all that respondent said or did in further-ance of the investigation of his dealings with the bank was said and done voluntarily; and held that the evidence relating thereto, both such as had been received or might thereafter be offered, was admissible, as far as this particular question was concerned. Such findings were excepted to on the ground that they were not supported by the evidence and that the undisputed evidence showed that respondent was promised by one clothed with apparent authority, and who he believed had such authority, to wit, Carpenter, that if he would play ball with them, meaning Carpenter and Jones, they would play ball with him.

Following the action of the court last stated the examination of Watkins was continued, and both Jones and Carpenter testi-fied, under like exception, concerning talks with respondent about his dealings with the bank.

Since the court's ruling as to the admissibility of the claimed confession applied to evidence previously received, the exception to its failure to pass upon that question when first raised is without merit.

██ In our view of the case, as presented here, the excep-tions to the admission of this line of evidence are unavailing. While it is a well-established rule that, generally speaking, con-fessions which are not voluntary, but are made either under the fear of punishment if they are not made, or in the hope of escaping punishment if they are made, are not received·in evi-dence, because experience shows that they are liable to be in-fluenced by these motives (see *Boorn* case tried in Bennington County in 1819 where a respondent was convicted of murder, on full confession, when no one had been killed); it is equally well established that where an involuntary confession results in the discovery of incriminatory facts, evidence of such facts is ad-missible.; although the courts are not agreed as to what extent the confession leading to such discovery may be received. Some admit the entire confession to accompany the facts; others admit only that part of the confession that relates to the corroborating facts, and still others admit no part of the confession but only the facts discovered thereby. Mr. Wigmore appears to favor the first rule. He says in his work on Evidence, par. 857, "If we are to cease distrusting any part [of the confession], we should cease distrusting all." Wharton in his work on Criminal

Evidence (11th ed.), par. 599, says that the third rule states the prevailing doctrine in this country, and cites: *State* v. *Lowry*, 170 N. C. 730, 87 S. E. 62; *State* v. *Moran*, 131 Iowa, 645, 109 N. W. 187; *State* v. *Middleton*, 69 S. C. 72, 48 S. E. 35; *State* v. *Mortimer*, 20 Kan. 93; *State* v. *Turner*, 82 Kan. 787, 109 Pac. 654, 32 L. R. A. (N. S.) 772, 136 A. S. R. 129; *Comm.* v. *James*, 99 Mass. 438. Since the reason for excluding involuntary confessions, as we have seen, is the likelihood of their being fabricated in the hope of escaping punishment, or obtaining leniency, the second rule seems the more logical one and is supported by *State* v. *Willis*, 71 Conn. 293, 314, 41 Atl. 820; *McQueen* v. *Comm.*, 196 Ky. 227, 235, 244 S. W. 681; *Murphy* v. *State*, 63 Ala. 1; *People* v. *Ascey*, 304 Ill. 404, 407, 136 N. E. 766; *Rusher* v. *State*, 94 Ga. 363, 21 S. E. 593, 47 A. S. R. 175; *Comm.* v. *Knapp*, 9 Pick. (Mass.) 496, 511, 20 A. D. 491; *Laros* v. *Comm.*, 84 Pa. 200, 209; *Shufflin* v. *State*, 122 Ark. 606, 184 S. W. 454; *Duffy* v. *People*, 26 N. Y. 588; *Deathridge* v. *State*, 1 Sneed (Tenn.) 75; *State* v. *Winston*, 116 N. C. 990, 21 S. E. 37; *State* v. *Danelly*, 116 S. C. 113, 107 S. E. 149, 14 A. L. R. 1420, and many other cases. Since it is an open question with us, we adopt this rule.

██ Assuming then, but not deciding, that the information given by the respondent respecting his operations with the bank was induced by intimidation or promise, or both, if subsequent investigation disclosed material facts found by reason of such information, so much thereof as related to such facts was admissible. Watkins testified, in substance, that he found a large part of the shortage before he received any information, directly or indirectly, from respondent, but that respondent aided him in finding other items amounting to, at least, $21,000. What respondent said that resulted in the discovery of the latter items was clearly admissible under the rule herein adopted. While in the talks between the witness and respondent the latter may have said things concerning the other items which, if his confession was involuntary, might not have been admissible under a literal construction of this rule because discovered by the witness without, and before he received, information from respondent concerning them, rather than as a result of such information (see *Baggett* v. *State*, 65 Tex. Cr. App. 425, 144 S. W. 1136, and cases cited), the respondent has treated what he said

respecting all items as standing alike. Since this is so, and since some of the evidence was admissible, the exception as far as it relates to Watkins' evidence is overruled.

■■ The testimony of Carpenter and Jones covered a wide field. But little of it related to the pending, or contemplated, examination of the bank. The court could not have understood, and the respondent has no right to, that all of it was covered by his exception. Some of it was undoubtedly admissible, most of it was probably harmless, and such of it as was objectionable, if any, has not been called to our attention. In the circumstances, the exception as applied to the evidence of these witnesses is overruled. We will not search the record for error, especially when, as here, the verdict is supported by competent, undisputed evidence of unquestioned verity.

All of the counts in the information are alike, except the date and the amount, and as far as here material are in the language following:

> "that John J. Cocklin of ——————, on, to wit:
> ——————, at ——————————, with force
> and arms —————— Dollars ($——————)
> of the goods and chattels of the Marble Savings
> Bank, an incorporated bank, then and there in the
> possession of said bank being found, feloniously
> did steal, take, carry away and fraudulently con-
> vert to his own use, contrary to the form, force
> and effect of the Statute," etc.

■ At the close of the State's evidence the respondent moved that the State be required to elect whether it would seek a conviction under P. L. 8440 or under P. L. 8451; the court so ordered, and the State elected to stand on the latter statute. When it did so, all questions concerning the purpose and scope of 8440, and the sufficiency of the information to charge an offense thereunder, went out of the case; and the only questions remaining were whether the information was sufficient to charge a violation of 8451, and whether the respondent thereafter took the steps necessary to avail himself of any defects therein. This situation should be kept in mind when considering the exceptions to the charge and to the refusal to set aside the verdict. The respondent first moved for a directed verdict, immediately

following the State's election, on the ground, among others, that the information failed to allege that he was the cashier or other officer, agent or servant of such bank when he committed the alleged acts, and that he committed the same as such cashier, officer, agent or servant. The motion was denied subject to his exception. That the information is fatally defective in the particular complained of is too plain to admit of doubt. *Hoyt* v. *State,* 50 Ga. 313. Cases holding it necessary to allege the fiduciary relation of the respondent when it is an essential element of the offense under statutes of similar import are analogous. Among them are: *State* v. *Stevenson,* 91 Me. 107, 39 Atl. 471; *State* v. *Thomas,* 126 Me. 230, 137 Atl. 396; *Moore* v. *United States,* 160 U. S. 268, 40 L. ed. 422, 16 Sup. Ct. 294; *State* v. *Farrington,* 59 Minn. 147, 60 N. W. 1088, 28 L. R. A. 395; *Comm.* v. *Barney,* 115 Ky. 475, 74 S. W. 181; *Giffin* v. *State,* 4 Tex. App. 390; *Miller* v. *State,* 88 Tex. Cr. Rep. 69, 225 S. W. 379, 12 A. L. R. 597; *Kibs* v. *People,* 81 Ill. 599; *People* v. *Greben,* 352 Ill. 582, 592, 186 N. E. 162; *Comm.* v. *Simpson,* 9 Metc. (Mass.) 138; *State* v. *Roubles,* 42 La. Ann. 200, 9 So. 435, 26 A. S. R. 179; *State* v. *Giffith,* 45 Kan. 142, 25 Pac. 616; Wharton Cr. Law, vol. 2, par. 1292. These requirements are recognized, but held complied with in *Claasen* v. *United States,* 142 U. S. 140, 35 L. ed. 966, 12 Sup. Ct. 169; *State* v. *Munch,* 22 Minn. 67; *Agar* v. *State,* 176 Ind. 234, 94 N. E. 819; *People* v. *Gordon,* 133 Cal. 328, 65 Pac. 746, 85 A. S. R. 174; *Keys* v. *State,* 112 Ga. 392, 37 S. E. 762, 81 A. S. R. 63; *Gibbs* v. *State,* 41 Tex. 491.

▮▮ But, the shortage being in the information and not in the proof, which clearly tended to show all facts necessary to constitute an offense under 8451, the only way of reaching it, under our practice, was by motion to quash, demurrer or motion in arrest of judgment. *State* v. *Colby,* 98 Vt. 96, 126 Atl. 510, and cases cited. It is true, generally speaking, that the time for filing a motion to quash or a demurrer had gone by when the State elected to stand on 8451 but, in the circumstances, the court unquestionably had authority to permit the respondent to then file either, and the claimed defect was so apparent we have no doubt it would have done so had it been requested. Whether its refusal would have constituted an abuse of discretion we have no occasion to consider since no such request was.

made. For the reasons indicated the motion for a directed verdict was properly denied. The respondent did not introduce any evidence, or argue the case to the jury.

In its charge, the court read to the jury both sections of the statute referred to and told them that it understood that the information was brought more specifically under 8451 and later told them that the charge made by the State concerned only that section. This was excepted to on the ground that the information did not charge an offense under that statute. This exception is without merit in view of the theory upon which the case was tried after the State made its election. The court told the jury that a fraudulent conversion by respondent of the funds or property of the bank it was alleged he had taken was an essential element of the offense charged, and explained what constituted such conversion. This was excepted to on the ground that the allegation respecting a fraudulent conversion was surplusage and it was error to charge concerning it. This is an essential element of the offense defined by 8451, which was the only one then involved. In the circumstances, the charge was proper, and it was beneficial rather than harmful to respondent.

The respondent seasonably filed a motion to set aside the verdict on various grounds which, in brief, raise the claim that he was informed against and stood trial for common-law larceny or violations of 8440 while the proof and court's charge permitted a conviction of violations of 8451, which was, in fact, what happened. This is not an accurate statement of the situation in view of the State's election. The questions then were those already indicated. The exception is without merit.

The respondent did not move in arrest of judgment, so the availability of such a motion is not before us.

While the information is insufficient to charge a violation of 8451, the respondent did not take the necesary steps to avail himself of the existing defects.

*No reversible error appears. Exceptions overruled.*