The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Richard N. FLEMING, Defendant–
Appellant.

No. 97CA2148.

Colorado Court of Appeals,
Div. IV.

July 8, 1999.

As Modified on Denial
of Rehearing Sept. 2, 1999.

Certiorari Denied June 26, 2000.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Cynthia A. Greenfield, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, James Grimaldi, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge BRIGGS.

Defendant, Richard Fleming, appeals the trial court's order revoking his probation. We affirm.

Following an altercation with his wife, defendant was charged with attempted first degree sexual assault. Pursuant to a plea agreement, defendant entered a guilty plea to the lesser offense of third degree misdemeanor assault, and the prosecutor dismissed the original charge. The agreement provided for a sentence to probation but included no other promise concerning sentencing. The court sentenced defendant to two years of probation.

The preprinted order setting forth the standard conditions of probation stated as condition 15 that defendant was required to obtain "[m]ental health evaluation/counseling or treatment" and "obtain counseling or treatment for drug abuse, alcohol abuse, or a mental condition...." The sentencing court added a handwritten note to the order that stated, "Condition #15 will be determined by the Court [at a later hearing]."

In the interim, defendant's probation officer recommended a psychosexual evaluation, and defendant participated in portions of the evaluation. However, he refused to participate in those portions requiring him to discuss the altercation with his wife and to take a polygraph test.

At the hearing that had been scheduled to determine the nature of defendant's evaluation and treatment, the prosecutor moved to revoke defendant's probation because of his

refusal to submit to the entire psychosexual evaluation. Defendant contested the imposition of such a requirement as a condition of his probation and, as an alternative, sought to withdraw his plea.

The district court did not revoke defendant's probation at that time. However, it determined that it had discretion to require a psychosexual evaluation, found that such an evaluation was appropriate in the circumstances, and refused to allow defendant to withdraw his plea. The court expressly ordered that defendant submit to the entire psychosexual evaluation, including a discussion with the evaluator of defendant's altercation with his wife.

At a later hearing, defendant again moved to withdraw his plea, this time based on ineffective assistance of counsel. The court rejected this motion as well.

Defendant continued to refuse to discuss with the evaluator the incident that led to his arrest and eventual guilty plea. The trial court revoked his probation. This appeal followed.

We initially note, as did the trial court, that defendant's probation was not revoked for his refusal to submit to a polygraph test. The revocation was based solely on defendant's refusal to discuss, as part of his psychosexual evaluation, the altercation with his wife.

Further, defendant on appeal does not assert that the imposition of *any* condition on his probation was contrary to the plea agreement. Nor does he argue that the court was otherwise without authority to include as a condition of probation that he submit to a mental health evaluation by a psychologist. Instead, defendant's sole contention on appeal is that the trial court erred in requiring, as a condition of probation, that he submit to a mental health evaluation in the form of a psychosexual evaluation, which in turn required him to discuss the altercation with his wife.

## I.

Defendant argues that ordering a psychosexual evaluation was contrary to his reasonable expectations under the plea agreement.

He further argues that his constitutional protection from double jeopardy and his rights under the related doctrine of collateral estoppel were thereby violated. Because both arguments are based on a mistaken premise, we conclude to the contrary.

■ Trial courts are given wide discretion in imposing conditions on probation. *See* § 16–11–101(1)(a), C.R.S.1998 ("The granting or denial of probation and the conditions of probation shall not be subject to appellate review unless probation is granted contrary to the provisions of this title."); *People v. Richards,* 795 P.2d 1343 (Colo.App.1989); *see also* § 16–11–202(1), C.R.S.1998("When it appears to the satisfaction of the court that the ends of justice and the best interest of the public, as well as the defendant, will be served thereby, the court may grant the defendant probation for such period and upon such terms and conditions as it deems best.").

■ In setting conditions on probation, it is proper for the court to consider aggravating or mitigating information. This includes other charges dismissed at the time of the plea. *People v. Lowery,* 642 P.2d 515 (Colo. 1982).

■ Defendant does not challenge the sentencing court's general discretion when setting conditions on probation. Instead, defendant's challenge to the requirement of a psychosexual evaluation rests on the assumption that, despite his plea to a different crime, the court was effectively sentencing him for a sex offense. While not articulated, the concern is apparently that he was being subjected to evaluation and treatment under the Standardized Treatment Program for Sex Offenders. *See* § 16–11.7–101 et seq, C.R.S.1998.

The evaluation the court ordered may well have resembled the initial step in the standardized program for the evaluation and treatment of a convicted sex offender. *See* §§ 16–11.7–104 and 16–11.7–105; Colorado Sex Offender Management Board, *Standards & Guidelines For The Assessment, Evaluation, Treatment And Behavioral Monitoring Of Adult Sex Offenders* (1998); *see also Peo-*

*ple v. Lenzini,* 986 P.2d 980 (Colo.App.1999). Indeed, the evaluation was to be performed by a state provider approved pursuant to § 16–11.7–106, C.R.S.1998.

Nevertheless, defendant did not plead guilty to a sex offense, and the sentencing court did not condition defendant's probation on the sex offender specific evaluation and treatment required for convicted sex offenders. As the trial court observed, defendant's evaluation was not statutorily mandated. It was no more than a mental health evaluation the court had discretion to order in order to determine *whether* and, if so, *what type* of mental health treatment would be appropriate as a condition of defendant's probation. *See* Colorado Sex Offender Management Board, *supra,* § 1.020, Discussion ("While it is preferable that sexual crimes not be plea bargained to non-sexual crimes, such plea bargains sometimes occur. However, this does not eliminate the need for the offender to be assessed based on the factual basis of the case."). As such, defendant's factually based evaluation was no different than that required for any other offender placed on probation. *See People v. Lowery, supra.*

We therefore conclude that the requirement of a psychosexual evaluation was not contrary to defendant's reasonable expectations under his plea agreement. Nor did it violate defendant's constitutional protection against double jeopardy or implicate the related doctrine of collateral estoppel.

## II.

Defendant separately argues that, by requiring him to discuss the altercation with his wife during the initial evaluation, the court was exposing him to an unfair risk of "serious consequences." He further argues that the requirement violated his Fifth Amendment privilege against self-incrimination. We again disagree.

■ We recognize that a defendant who pleads guilty to a sex offense and is sentenced to probation may have concerns with being asked questions about the charged sexual conduct. For example, in *People v. Birdsong,* 958 P.2d 1124 (Colo.1998), the supreme court determined that, when a defendant is

on probation for a sex offense and continues to deny an element of the offense during sex offender specific treatment, the sentencing court may revoke probation for failure to complete treatment successfully. It does not matter that the defendant had entered an *Alford* plea, while maintaining a claim of innocence.

■ However, in this case defendant was required only to discuss the incident leading to his arrest and eventual conviction as part of an initial mental health evaluation. He was not required as an express or implied condition of his probation to admit or deny guilt to the dismissed charge during that discussion. Furthermore, any incriminating statement he might have made about the altercation with his wife could not have been used against him to reinstate the original charge. *See St. James v. People,* 948 P.2d 1028 (Colo.1997); *see also State v. Mace,* 154 Vt. 430, 578 A.2d 104 (1990)(a defendant convicted of a related lesser offense pursuant to a plea agreement cannot later be prosecuted for the originally charged greater offense).

We also note that defendant was not required as a condition of his probation to discuss any other incidents during the initial evaluation. If he had been asked during the evaluation about other incidents, he would have been entitled to invoke his Fifth Amendment privilege. *See People v. Elsbach,* 934 P.2d 877 (Colo.App.1997).

In sum, nothing in the record or applicable law indicates the condition placed on defendant's probation requiring him to discuss the incident leading to his arrest and conviction placed him at risk of having probation revoked, having the original charge reinstated, or having other charges filed. His challenge to that condition must therefore fail.

Further, because defendant cannot show any prejudice resulting from his legal representation, his asserted violation of his right to effective assistance of counsel must also fail. *See People v. Fitzgerald,* 973 P.2d 708 (Colo.App.1998); *see also People v. Lustgarden,* 914 P.2d 488 (Colo.App.1995).

## III.

 Defendant argues that, by requiring him to submit to a psychosexual evaluation and discuss the altercation with his wife, the district court improperly "modified" his sentence. We are not persuaded.

The court indicated in its initial order setting the conditions of defendant's probation that it would later determine the type of mental health evaluation to be required. Defendant on appeal has not challenged this aspect of the court's procedure.

Nothing in the record indicates that any component of the psychosexual evaluation was inconsistent with, or a material addition to, the condition that defendant submit to a mental health evaluation. Indeed, defendant agreed to submit to all parts of the psychosexual evaluation, except for discussing the altercation with his wife. As to that requirement, nothing in the record indicates this was an improper, or even unusual, component of a mental health evaluation.

We therefore find no modification of defendant's sentence.

## IV.

Defendant's final contention is that the trial court erred when it refused to consider his request to withdraw his plea under Crim. P. 32(d). He argues that he effectively sought to withdraw the plea before the sentence was imposed. We again disagree.

 Under Crim. P. 32(d), a court has discretion to permit a defendant to withdraw a guilty plea. However, a motion to withdraw a plea must be made "before sentence is imposed or imposition of a sentence is suspended."

At the hearing on defendant's first motion to withdraw his plea, defendant's counsel specifically stated that the motion was being asserted under Crim. P. 35(c), and not under Crim. P. 32(d).

As discussed, the district court did not modify defendant's sentence, either at the hearing on the nature of the evaluation to be imposed or later when it ordered defendant to submit to a psychosexual evaluation that required him to discuss the altercation with

his wife. Therefore, a Crim. P. 32(d) motion, had it been made, would have been untimely.

Order affirmed.

Judge RULAND and Judge KAPELKE concur.